UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LONDON

CIVIL ACTION NO. 07-162-JBC

TERESA L. ABNER, PLAINTIFF

V. MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income ("SSI"). AR 22. The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I. Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.

1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II. The ALJ's Determination

The plaintiff is a forty-six-year-old female with no past relevant work experience.  DE 11 at 5.  She filed an application for Supplemental Security Income ("SSI") on July 28, 2005, alleging disability beginning July 1, 2000. AR 18.  The claim was denied initially on October 20, 2005, and upon reconsideration on

January 6, 2006. AR 16. After a hearing on September 6, 2006, Administrative Law Judge ("ALJ") Charles J. Arnold determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 16. At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the disability application date, July 28, 2005. AR 18. At Step 2, the ALJ found that the plaintiff's combination of impairments was a severe impairment.[1] The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. AR 18. At Step 4, the ALJ found that the claimant had no past relevant work experience. AR 21. Finally, at Step 5 the ALJ determined that due to the plaintiff's age, education, work experience, and residual functional capacity ("RFC"), jobs exist in significant numbers in the national economy that the plaintiff can perform. AR 22. The ALJ denied the plaintiff's claim for SSI, and the plaintiff appealed to the Appeals Council. AR 3, 22. Her appeal was denied on April 12, 2007, and she commenced this action. DE 11 at 2, AR 3.

**III. Legal Analysis**

The plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence.[2] Specifically, the plaintiff argues that the ALJ failed to

---

[1]The plaintiff has the following severe impairments: major depression, chronic obstructive pulmonary disease, arthritis, and back pain/lumbar strain. AR 18.

[2]The ALJ determined that the plaintiff
> has the [RFC] for light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

mention certain limitations noted by physicians in the record and that the ALJ "substituted his own opinion for those of every physician on record to offer an opinion regarding the plaintiff's functioning and work related limitations." DE 11 at 9. The assessment of a claimant's RFC is "based on all the relevant evidence in the case record," and not simply on the opinions from medical sources. 20 CFR 416.945(a)(1). Social Security Ruling ("SSR") 96-5p states:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: a medical source statement is evidence that is submitted to the SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

Thus, while "[t]he ALJ may not 'substitute his own layman's opinion for the findings and opinion of a physician,'" *see Chelte v. Apfel*, 76 F. Supp. 2d 104, 108 (D. Mass. 1999) (*quoting Gonzalez-Perez v. Secretary of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987)), the final responsibility for determining the RFC

---

to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. IF someone can do light work, we determine that she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods. The claimant must avoid pulmonary irritants, humidity, and temperature extremes. She may perform only "low stress" work, jobs that do not demand high production demands, or working with the public.
AR 20.

is reserved for the ALJ. 20 C.F.R. § 416.927(e)(2). Therefore, he need not defer to the state agency physical and mental RFC assessments, and instead such assessments are merely considered along with the rest of the medical evidence in determining the RFC.[3]

The plaintiff argues that the ALJ's determination of her RFC did not take into account physical limitations noted by state agency physicians and by Dr. Stephen Nutter. State agency physicians examining the plaintiff from September 2005 through December 14, 2005, concluded that she had numerous impairments that would affect her RFC. The plaintiff cites Dr. Amanda Lange's September 29, 2005, report, and another state agency reviewer's December 14, 2005, report, that include limitations in standing and walking, climbing ladders, and gross and fine manipulation, as well as avoidance of exposure to hazards and vibration. The ALJ considered those opinions and commented that his conclusion was "supported by the opinions of the State Agency physicians . . . who found that the claimant can perform a significant range of light work." AR 21. But he also noted that "[a]s those of non-examining physicians . . . , their opinions are not entitled to controlling weight but must be considered and weighed as those of highly qualified physicians

---

[3] The plaintiff also claims that the ALJ is precluded from making an RFC assessment without some expert medical testimony. The ALJ does not need expert medical testimony to decide the plaintiff's claim. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v Halter*, 279 F.3d 348, 355 (6th Cir. 2001). *See* 20 C.F.R. § 416.927(f)(iii).

5

. . . who are experts in the evaluation of medical issues in disability claims." AR 21. While the non-examining sources limited the plaintiff's ability to stand and walk, Dr. Nutter's evaluation did not include limitations on plaintiff's ability to sit, stand, or walk for any length of the workday. AR 154. Dr. Nutter actually examined the plaintiff, and the ALJ discussed the examination at length[4] and considered the limitations mentioned by the examining physician. In addition, the plaintiff does not point to any medical record from Mountain Comprehensive Health Care which includes a limitation on her capacity to work. AR 167-235. Further, the ALJ's decision noted that one of the plaintiff's claims for disability is based on lower back and leg pain, but no medical evidence on record suggested a disabling musculoskeletal condition, nor was there a record of severe pain requiring hospitalization or a suggestion of surgical intervention. AR 21. The court finds that substantial evidence supports the ALJ's RFC assessment of the plaintiff's physical capabilities.

The plaintiff also contends that the ALJ's determination of her RFC did not take into account mental limitations noted by Dr. Jeanne Bennett and state agency physicians. The ALJ discussed the plaintiff's mental status evaluation and limitations, noting:

---

[4] The ALJ specifically referenced Dr. Nutter's assessment that the plaintiff "should avoid squatting, climbing ladders or scaffolds, working on unprotected heights or dangerous situations where good balance is needed, and that she is at least moderately impaired in her ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, carrying and traveling as well as pushing and pulling heavy objects." AR 19.

> [Dr. Bennett] assessed no limitations in [the plaintiff's] ability to perform simple repetitive tasks; moderate limitations in her ability to sustain attention and concentration for simple repetitive tasks and to respond appropriately to supervision, co-workers, and work pressures in a work setting; and marked limitations in her ability to tolerate stress and pressure of day-to-day employment.

AR 19-20. The ALJ reviewed the plaintiff's mental status under the Listing 12.04 Affective Disorders. *See* AR 19-20. The ALJ found the plaintiff has "mild" limitations in this category of "activities of daily living," that she has "moderate" limitations in the area of "social functioning," and that she has "moderate" limitations in the area of "concentration, persistence, and pace." AR 19-20. In support of these findings, the ALJ referenced the plaintiff's ability to pay bills and manage household finances, to do household chores, and to care for her minor daughter. *Id.* These findings are consistent with Dr. Bennett's psychological evaluation. AR 150. While the plaintiff argues that the ALJ did not consider Dr. Bennett's diagnosis of major depressive disorder, recurrent, moderate, and chronic pain secondary to psychological features and arthritis, these exact impressions are mentioned in the ALJ's opinion. *See* AR 19.

The plaintiff claims that the ALJ's decision does not discuss the mental work limitations from Dr. Edward Stodola's state agency reports from October 18, 2005. *See* AR 236-254. While the ALJ did not explicitly discuss the limitations in the report, his decision did mention the weight given to the findings of state agency examiners. AR 21. Further, the mental impairment conclusions in the October 18,

2005, report are largely identical to the conclusions drawn by Dr. Bennett,[5] and differ only in the opinion regarding the plaintiff's stress tolerance. The ALJ noted in his RFC conclusion that the plaintiff is qualified to perform only "low stress" work, which is a stricter standard than the one presented in the October 18, 2005, report. Thus, the ALJ found the plaintiff more limited than Dr. Stodola did in certain respects. Further, the ALJ noted that the plaintiff had not sought or been referred for mental health treatment, despite being diagnosed with major depressive disorder. AR 21.

The only doctors on record to perform direct examination on the plaintiff are Drs. Bennett and Nutter and the physicians at Mountain Comprehensive Health Care. The ALJ could not find evidence of a physician's stating that the plaintiff is disabled. AR 21. Based on his review of the evidence, the ALJ found that the plaintiff has the RFC for light and sedentary work. The court finds that the ALJ's RFC assessment and ultimate opinion are supported by and consistent with substantial evidence in the record.

## IV. Conclusion

Accordingly,

---

[5] For instance, Dr. Bennett found that the plaintiff's "ability to sustain attention and concentration towards the performance of simple repetitive tasks" and her "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting is affected by the impairment with moderate limitations." AR 149-50. Similarly, Dr. Stodola found that the plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods of time and in her ability to interact appropriately with the general public. AR 237-38. The ALJ specifically included in his RFC assessment that the plaintiff must work in a position that does not demand "working with the public." AR 20.

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 10) is **DENIED.**

Signed on August 20, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY